UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                              Case No. 05-42508

DSC, LTD.,                                          Involuntary Chapter 7

        Alleged Debtor.                             Judge Thomas J. Tucker
_____/

**OPINION REGARDING FEE APPLICATIONS OF DSC, LTD.**

## I. Introduction

This is an involuntary bankruptcy case. The alleged debtor, DSC, Ltd. ("DSC")

prevailed, and now seeks a judgment for more than half a million dollars in attorney fees and

expenses against two of the petitioning creditors, based on 11 U.S.C. § 303(i)(1).[1]

The involuntary petition was filed on January 27, 2005, and was vigorously contested by

DSC. After conducting a seven-day trial, the Court delivered a bench opinion and dismissed the

case, on April 26, 2005. The Court dismissed the case because it concluded that of the four

petitioning creditors properly before the Court,[2] only two of them met the necessary

_____

[1] Section 303(i) provides:

(i) If the court dismisses a petition under this section other than on consent of all
petitioners and the debtor, and if the debtor does not waive the right to judgment under
this subsection, the court may grant judgment—

> (1) against the petitioners and in favor of the debtor for—
> > (A) costs; or
> > (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
> > (A) any damages proximately caused by such filing; or
> > (B) punitive damages.

[2] The petitioning creditors, for purposes of the trial and the Court's decision, were Crown
Enterprises, Inc., Riverview-Trenton Railroad Company, Voest-Alpine Industries, Inc., and Ebner

(continued...)

qualifications to be petitioning creditors under 11 U.S.C. § 303(b)(1). (Three qualifying creditors

were required in this case under § 303(b)(1).)[3] The two non-qualifying creditors were Crown

Enterprises, Inc. ("Crown") and Riverview-Trenton Railroad Company ("RTR"). The Court

found that they did not qualify under § 303(b)(1), because neither of them had any claims against

DSC that were "not contingent as to liability or the subject of a bona fide dispute as to liability or

amount." 11 U.S.C. § 303(b)(1).[4]

These two unsuccessful petitioning creditors, Crown and RTR, filed a motion for

reconsideration. After the Court denied that motion,[5] Crown and RTR appealed. The Court's

dismissal and reconsideration orders were affirmed on appeal, by both the district court and the

---

[2](...continued)
Furnaces, Inc.

[3] Section 303(b)(1) provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy
court of a petition under chapter 7 or 11 of this title—

> (1) by three or more entities, each of which is either a holder of a claim against
> such person that is not contingent as to liability or the subject of a bona fide
> dispute as to liability or amount, or an indenture trustee representing such a
> holder, if such noncontingent, undisputed claims aggregate at least $12,300 more
> than the value of any lien on property of the debtor securing such claims held by
> the holders of such claims.

[4] The Court applied the version of § 303(b)(1) as amended by the "Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005" ("BAPCPA"). BAPCPA added the phrase "as to
liability or amount" in the phrase just quoted from Section 303(b)(1). Most provisions of BAPCPA
became effective on October 17, 2005. But the amendment to Section 303(b)(1) applied retroactively to
cases, like this one, that were pending on the date BAPCPA was signed into law by the President (April
20, 2005). *See* Docket # 125: Order Regarding Amendments to Section 303 of the Bankruptcy Code
Made by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005."

[5] *In re DSC, Ltd.*, 325 B.R. 741 (Bankr. E.D. Mich. 2005).

2

court of appeals. *In re DSC Ltd.*, 2006 WL 800709 (E.D. Mich. 2006); *aff'd.*, 486 F.3d 940 (6th Cir. 2007).

In its order dismissing this case, the Court retained jurisdiction to determine, among other things, whether to grant attorney fees and costs to DSC under § 303(i)(1).[6] DSC later filed a fee application and two supplemental fee applications,[7] seeking a total of $535,589.08 in attorney fees and expenses against Crown and RTR.[8] The fee applications include fees and expenses for DSC's successful defense against Crown's and RTR's appeals.

DSC does not seek any damages (including punitive damages) under 11 U.S.C. § 303(i)(2). Such damages are not available in this case, because the Court found that the petitioners did not file the involuntary petition in bad faith.[9]

Crown and RTR oppose DSC's fee applications on several grounds. They argue first and foremost that the Court should exercise its discretion under § 303(i)(1) not to award any fees or expenses. In the alternative, they argue that any fee award should be much lower than that requested by DSC, for a variety of reasons.

The Court held a hearing on the fee applications, received post-hearing supplements from the parties, and took the matter under advisement. For the reasons stated in this opinion, the

---

[6] Docket # 132: Order Dismissing Amended Involuntary Petition for Chapter 7 Relief and Dismissing Case, Subject to Limited Retention of Jurisdiction, and Granting Other, Related Relief, at 1.

[7] Docket ## 216, 242, 245; *see also* Docket # 236 at 12-13 and Exhibits 1 and 2 thereto (modifying amount of fees requested).

[8] DSC does not seek fees or expenses against the other petitioning creditors.

[9] Docket # 210: Opinion Regarding Whether Petitioning Creditors Filed the Involuntary Petition in Bad Faith.

Court will deny DSC's fee applications, and will not award DSC any fees or expenses under 11 U.S.C. § 303(i)(1).

## II. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the United States District Court's Local Rule 83.50(a)(E.D.M.). This is a core proceeding because it is a proceeding "arising under title 11," or a proceeding "arising in a case under title 11," within the meaning of 28 U.S.C. §§ 157(a) and 157(b)(1), as the Sixth Circuit interprets those statutes. *See, e.g., Bliss Technologies, Inc. v. HMI Industries, Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602-03 (Bankr. E.D. Mich. 2004).

## III. Discussion

### A. Factors guiding the court's discretion to award or deny fees under § 303(i)(1)

It is undisputed that this Court has discretion under § 303(i)(1) to "grant judgment" against petitioners Crown and RTR and in favor of DSC for costs and "a reasonable attorney's fee." This is so because the Court dismissed the involuntary petition under § 303 "other than on consent of all petitioners and the debtor," and the debtor did not waive its right to judgment under § 303(i). The Court also has discretion, however, to deny fees and costs.

The parties have cited many cases regarding factors to be considered by a bankruptcy court in exercising its discretion under § 303(i)(1). Of these cases, there are two court of appeals decisions, one from the Ninth Circuit and one from the Seventh Circuit. There are also three Sixth Circuit decisions, but they do not discuss such factors. Having reviewed all of the cases cited by the parties, the Court concludes that the Ninth Circuit decision, *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701 (9th Cir. 2004), best explains the correct legal framework

4

and factors for the bankruptcy court's exercise of discretion in this context. *Higgins* is

comprehensive, and so is quoted here at length:

> However, the statute's use of the word ''may,'' rather than the word ''shall,'' ''clearly contemplates that fees and costs will not be awarded in all cases.'' Therefore, in addition to determining whether the prerequisites are satisfied, the court must exercise some form of discretion in awarding fees and costs under § 303(i)(1).
>
> In this case, the statutory structure and legislative history provide minimal guidance. The statute simply indicates that bad faith is not a prerequisite to awarding attorney's fees and costs under § 303(i)(1). This is evident because § 303(i)(2) explicitly provides for greater damages ''against any petitioner that filed the petition in bad faith.'' . . . Although the legislative history underscores the permissive grant of authority to award fees, it does not provide any indication of how a bankruptcy court is supposed to wield that discretion.
>
> Fortunately, the case law provides more assistance. The majority of courts that have addressed the issue have adopted a totality of the circumstances test.
> . . .
> Although we adopt the totality of the circumstances test as the appropriate standard under § 303(i)(1), we do not abandon the premise that ''any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.'' Thus, when an involuntary petition is dismissed on some ground other than consent of the parties and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized. This presumption helps reinforce the idea that ''[t]he filing of an [i]nvoluntary [p]etition should not be lightly undertaken,''and ''will serve to discourage inappropriate and frivolous filings.'' Filing an involuntary petition should be a measure of last resort because even if the petition is filed in good-faith, it can ''chill[ ] the alleged debtor's credit and sources of supply,'' and ''scare away his customers.''

5

Although the presumption operates in favor of the alleged debtor, the petitioner must be given an opportunity to rebut the ''presumption that fees and costs are authorized.'' . . . [O]nce the debtor has satisfied the burden of demonstrating the reasonableness of the fees requested, ''[i]t is then the petitioning creditors' burden to establish, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees.'' However, this does not give the petitioning creditor license to conduct additional discovery and present evidence on an issue that has already been decided. The rebuttable presumption framework allows the court, which by this point in the process has heard all the evidence surrounding dismissal, to make ''an informed examination of the entire situation'' without the burden of conducting another mini-trial.

Although the totality of the circumstances test can be somewhat amorphous, **the bankruptcy court**, where relevant, **should consider the following factors before awarding attorney's fees and costs under § 303(i)(1): 1) ''the merits of the involuntary petition,'' 2) ''the role of any improper conduct on the part of the alleged debtor,'' 3) ''the reasonableness of the actions taken by the petitioning creditors,'' and 4) ''the motivation and objectives behind filing the petition.''** Although definitive in most cases, this list is not exhaustive, and a bankruptcy court may, in its discretion, choose to consider other material factors it deems relevant.

379 F.3d at 706-08 (citations omitted; emphasis added).

Of the other appellate cases cited by the parties, the Seventh Circuit's decision in *Susman v. Schmid* (*In re Reid*), 854 F.2d 156 (7th Cir. 1988) held that while bad faith on the part of the petitioning creditors is not required for an award of attorney fees under § 303(i)(1), "the presence or absence of bad faith will inform the exercise of" the Court's discretion. And *Susman* held that the court "should also consider the merit of a creditor's position that the petition was properly filed" in deciding whether to award attorney fees. 854 F.2d at 160. These factors identified by

the Seventh Circuit are essentially the same as factor nos. 1, 3, and 4 identified by the Ninth

Circuit in *Higgins*, quoted above.

Of the three Sixth Circuit cases cited by the parties, none of them discuss the factors to be

considered in deciding whether to award attorney fees under § 303(i)(1). *See Alexander v.*

*Waddey & Patterson, P.C.*, 115 Fed.Appx. 801 (6th Cir. 2004)(affirmed bankruptcy court's

denial of damages, costs, and fees based on finding of no bad faith; decision appears to have been

limited to § 303(i)(2), which requires that the petition be filed in bad faith); *DBH Limited, Inc. v.*

*Barrons* (*In re DBH Limited, Inc.*), 23 Fed.Appx. 422 (6th Cir. 2001)(affirmed bankruptcy

court's denial of fees under § 303(i)(1) based on "totality of the circumstances," without

discussing factors to be considered under that standard); *Bradner v. Cooper School of Art, Inc.*

(*In re Cooper School of Art, Inc.*), 709 F.2d 1104 (6th Cir. 1983) (affirmed fee award under

§ 303(i)(1) without discussion of relevant factors; only issue on appeal was a jurisdictional

issue).[10]

### B. Application of relevant factors

The Court will now apply the four *Higgins* factors, noted above, to this case.

#### 1. Factor no. 1: "The merits of the involuntary petition"

This factor, "the merits of the involuntary petition," focuses on the degree to which the

petitioner creditors' "position had merit, although it failed." *See Susman v. Schmid*, 854 F.2d at

161. As several cases have noted, "[t]he closer the question of dismissal, the less likely it may be

---

[10] Two of these Sixth Circuit cases are unpublished. The Sixth Circuit Rules now permit the citation of unpublished opinions. *See* 6 Cir. R. 28(g), as amended effective January 24, 2007. The Sixth Circuit rule was amended in response to the December 1, 2006 adoption of Fed.R.App.P. 32.1. Previously, the Sixth Circuit's rules restricted the citation of its unpublished opinions.

appropriate to award counsel fees." *In re Ross*, 135 B.R. 230, 238 (Bankr. E.D. Pa. 1991). *See also In re Scrap Metal Buyers of Tampa, Inc.*, 253 B.R. 103, 111 (M.D. Fla. 2000) (same; affirming bankruptcy court's denial of fees, in part because "the petition was dismissed by only a narrow margin"); *In re Compuhouse Systems, Inc.*, 168 B.R. 305, 310 (Bankr. W.D. Pa. 1994) (same), *rev'd on other grounds*, 179 B.R. 474 (W.D. Pa. 1995), *aff'd.*, 85 F.3d 612 (3rd Cir. 1996).

In this case, the Court's decision whether to dismiss the involuntary petition, rather than enter an order for relief against DSC, was a close call. Of the elements required for petitioning creditors to prevail, DSC admitted that it was "generally not paying [its debts] as such debts become due," 11 U.S.C. § 303(h)(1). The disputes were (1) whether at least three of the four petitioning creditors were holders of a claim "that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount," 11 U.S.C. § 303(b)(1); and (2) whether some or all of the petitioning creditors filed the petition in bad faith. As to the bad faith issue, the Court ultimately found that the petitioning creditors did *not* file the petition in bad faith. *See* discussion in part III-B-3 of this opinion, below.

As to the remaining issue, Court found after a lengthy trial that only two of the four petitioning creditors — namely, Voest-Alpine Industries, Inc., and Ebner Furnaces, Inc. — were qualifying creditors under § 303(b)(1).[11] The involuntary petition failed for lack of only one more qualifying creditor, since three qualifying creditors were required.

Thus, the only reason an order for relief was not entered in this case was for lack of one additional qualifying creditor. And petitioning creditors barely missed meeting that requirement.

---

[11] Docket # 143: Transcript of April 26, 2005 Bench Opinion, at 11-21.

The Court found that neither Crown nor RTR was a qualifying creditor, because their claims

against DSC were all the subject of a bona fide dispute as to liability or amount.[12]  But this was a

close and difficult decision given the evidence, at least with respect to the claims based on an

alleged pre-petition settlement agreement between the parties.[13]

Petitioning creditors' falling one creditor short was a close call for a second reason.

Another creditor, O'Brien & Gere Engineers, Inc., sought to join as a petitioning creditor on the

day trial began.  The Court refused to permit that attempted joinder, notwithstanding Code

§ 303(c),[14] because it came one day late.  The Court had set a deadline of February 28, 2005, the

day before the scheduled March 1, 2005 trial date, for any additional creditors to join the

involuntary petition by filing a notice of joinder.  When the case was called for trial on the

morning of March 1, O'Brien & Gere had not yet filed any notice of joinder.  Nor was anyone

present on behalf of O'Brien & Gere.  The Court refused the oral request of Crown & RTR, made

---

[12]  *Id*. at 21-56.

[13]  *Id*. at 34-57.

[14]  Section 303(c) permits certain non-petitioning creditors to join an involuntary petition.  That
section states:

> (c) After the filing of a petition under this section but before the case is
> dismissed or relief is ordered, a creditor holding an unsecured claim that
> is not contingent, other than a creditor filing under subsection (b) of this
> section, may join in the petition with the same effect as if such joining
> creditor were a petitioning creditor under subsection (b) of this section.

11 U.S.C. § 303(c).

at the beginning of trial on March 1, to permit the late joinder by O'Brien & Gere. O'Brien & Gere's untimely notice of joinder was filed with the Court later that day.[15]

The Court had good reasons to deny O'Brien & Gere's untimely joinder,[16] and the Sixth Circuit agreed with those reasons in affirming that decision.[17] But the fact remains that had O'Brien & Gere filed its notice of joinder in the involuntary petition one day earlier than it did, the Court would have considered it as a petitioning creditor. And in that event, it is quite possible that the Court would have found O'Brien & Gere to be a qualifying creditor.[18]

In addition to the fact that O'Brien & Gere's notice of joinder was filed only one day late, the issue of O'Brien & Gere's attempted joinder was a close issue for another reason. After trial, Crown and RTR argued that the Court had no authority to deny the joinder, even though it was filed a day after the Court's joinder deadline. They argued, based on the wording of Code § 303(c), that O'Brien & Gere could join the involuntary petition any time "before the case is dismissed or relief is ordered." Because the statute expressly permitted joinder until that time, they argued, the Court could not impose any earlier deadline for joinder.

---

[15]  Docket # 61.

[16]  *In re DSC, Ltd.*, 325 B.R. 741, 744-45 (Bankr. E.D. Mich. 2005).

[17]  *In re DSC, Ltd.*, 486 F.3d 940, 946-48 (6th Cir. 2007).

[18]  The Court cannot be certain of this, of course, because DSC did not present evidence at trial to contest O'Brien & Gere's status as a qualifying creditor. DSC had no need or opportunity to present any such evidence, because the Court ruled at the beginning of trial that O'Brien & Gere could not join the involuntary petition.

10

This presented an unsettled and rather difficult legal issue. This Court rejected Crown's

and RTR's argument. *In re DSC, Ltd.*, 325 B.R. 741, 744-45 (Bankr. E.D. Mich. 2005).[19] The

Sixth Circuit agreed with this decision:

> While § 303(c) allows joinder "before the case is dismissed or
> relief is ordered," the Court agrees with the bankruptcy court's
> holding that the statute "merely sets an absolute, outside limit on
> the time within which certain qualifying creditors may join an
> involuntary petition. It means that a would-be joining creditor
> must join, if at all, before the Court has dismissed an involuntary
> bankruptcy petition." The statute does not prohibit a court from
> setting an earlier deadline, based upon its case management
> authority, in order to ensure orderly, fair, and efficient proceedings.
> This is especially true in the context of an involuntary bankruptcy
> proceeding, where the court is required to expedite such
> proceedings. Fed.R.Bank.P. 1013(a).

*In re DSC, Ltd.*, 486 F.3d 940, 948 (6th Cir. 2007). While Crown and RTR lost on this legal

issue, the issue was unsettled until the Sixth Circuit decided it.

For all of these reasons, it is fair to say that the petitioning creditors in this case barely

missed prevailing, and DSC came very close to suffering an order for relief under Chapter 7 of

the Bankruptcy Code. This is a factor that weighs against granting DSC attorney fees and costs

under § 303(i)(1).

### 2. Factor no. 2: "The role of any improper conduct on the part of the alleged debtor"

This factor, "the role of any improper conduct on the part of the alleged debtor," is

essentially neutral in this case; it does not weigh either in favor of or against awarding fees.

---

[19] The Court also ruled that Crown and RTR had waived this legal argument by failing to raise it until after trial. 325 B.R. at 744. The Sixth Circuit agreed, 486 F.3d at 946-47, but then decided the legal argument on the merits as well.

Based on the evidence presented at trial, the Court does not find any improper conduct on the part of DSC that would tend to weigh against awarding fees to DSC.

### 3. Factor nos. 3 and 4: "the reasonableness of the actions taken by the petitioning creditors," and "the motivation and objectives behind filing the petition"

The Court will consider together the third and fourth *Higgins* factors, namely "the reasonableness of the actions taken by the petitioning creditors," and "the motivation and objectives behind filing the petition." These factors both weigh against awarding attorney fees and expenses to DSC. This Court previously found, based on the evidence presented at trial, that:

> 1. The Alleged Debtor DSC, Limited failed to meet its burden of proving that either Crown or [RTR] filed the involuntary petition or the amended involuntary petition in bad faith, within the meaning of 11 U.S.C. § 303(i)(2).

> 2. Neither Crown nor [RTR] filed the involuntary petition or the amended involuntary petition in bad faith, within the meaning of 11 U.S.C. § 303(i)(2).

> 3. In filing the involuntary petition and the amended involuntary petition, the motives of Crown and [RTR] were to use the bankruptcy case and bankruptcy process for legitimate, bankruptcy-related purposes, in a continuing effort to protect their rights and pursue their claims against the Alleged Debtor DSC, Limited and related persons and entities.

> 4. In filing the involuntary petition and the amended involuntary petition, Crown and [RTR] each had a good faith belief that they had good grounds to obtain an order for bankruptcy relief against the Alleged Debtor.

> 5. While Crown and [RTR] were ultimately unsuccessful, after trial, in prosecuting the involuntary case against the Alleged Debtor, when they filed the petition and the amended petition they had substantially more than a colorable basis to believe that they

12

were qualifying creditors under 11 U.S.C. § 303(b)(1), that there
would be enough qualifying creditors under 11 U.S.C. § 303(b)(1),
and that the Court would enter an order for relief against the
Alleged Debtor under 11 U.S.C. § 303(h).[20]

The Court adheres to these findings. Based on these findings, and on the evidence presented at trial, the Court concludes that (1) Crown and RTR acted reasonably in both filing and pursuing their involuntary bankruptcy petition against DSC, even though ultimately they were (barely) unsuccessful; and (2) Crown's and RTR's motives and objectives were not improper.

**C. Ruling based on application of the relevant factors**

The Court is mindful that normally, "any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed," and that a rebuttable presumption exists in favor of granting such fees and costs. *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d at 707. Here, however, the petitioning creditors Crown and RTR have rebutted the presumption. They have met their "burden to establish, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees." *Id.*

**IV. Conclusion**

For the reasons stated, the Court will deny DSC's fee applications, and will not award DSC any fees or expenses under 11 U.S.C. § 303(i)(1). The Court will enter a separate order.

FOR PUBLICATION

**Signed on April 15, 2008**                                    **/s/ Thomas J. Tucker**

---

[20] Docket # 210: Opinion Regarding Whether Petitioning Creditors Filed the Involuntary Petition in Bad Faith, at 2-3.

13

**Thomas J. Tucker**
**United States Bankruptcy Judge**

14